OPINION OF THE COURT
Beverly S. Cohen, J.
In a declaratory action commenced by the plaintiff Aristacar Corporation (Aristacar) against the Attorney-General of the State of New York (AG), AG moves for an order granting summary judgment in favor of the defendant declaring, as a matter of law, that Aristacar’s activities constitute the offer and sale of a franchise within the meaning of General Busi *552 ness Law § 681 (3) (a) and (b). Aristacar opposes the motion and cross-moves for an order declaring that it is not a franchise (sic) and therefore not subject to the franchise laws of New York. For reasons which follow, the court finds, as a matter of law, that Aristacar is subject to General Business Law article 33, the New York State Franchise Law.
General Business Law § 681 (3) defines the term "franchise” as follows:
"3. 'Franchise’ means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
"(a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor, and the franchisee is required to pay, directly or indirectly, a franchise fee, or
"(b) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services substantially associated with the franchisor’s trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate, and the franchisee is required to pay, directly or indirectly, a franchise fee.
"A franchise under this article shall not include any agreement, contract, or franchise subject to the provisions of article eleven-B of this chapter or section one hundred ninety-nine of this chapter, or any agreement or contract for the sale of motor fuel.”
New York’s definition of a franchise is considered among the broadest in the country. The first requirement is that there be a grant of a right to engage in the business of offering, selling, or distributing goods or services. Whereas in other jurisdictions a franchise will be found only when three additional elements are present, namely, a franchise fee, marketing plan, and trademark, New York considers a franchise to exist when either of the latter two elements is combined with a franchise fee (see, Vimbor v Fleet Radio, US Dist Ct, ED NY 1985, 85 Civ 2463; Kaufmann, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law art 33, 1989 Pocket Part, at 147).
Aristacar is the owner and operator of a nonmedallioned radio dispatch transportation service licensed by the Taxi and Limousine Commission of the City of New York (TLC) to *553 provide automobile transportation to the public. Aristacar is also licensed by the Federal Communication Commission (FCC) to operate over a two-way radio frequency. Aristacar, in turn, sells licenses to drivers (individual, joint venture, partnership or corporation) for a fee and service charge. No basis was offered for exempting this fee from the broad definition of a franchise fee found in General Business Law § 681 (7). Aristacar serves as a base from which the two-way radio network operates, furnishes the radio equipment used by the licensees, and procures customers which are allotted to the licensees through Aristacar’s intricate system of bidding.
The radio right agreement reached with each driver grants Aristacar’s licensees the right to use Aristacar’s FCC radio license, its radio equipment, and its radio rights; to operate their own automobiles (brand, style, and age of car allowable as defined by Aristacar’s license agreement) to provide transportation services to customers, solicited, obtained, and billed by Aristacar. In accordance with the agreement, the licensee is required to affix the Aristacar logo to the vehicle to enable the customer to identify the company’s vehicle when it arrives at the pickup location. Aristacar’s success, as that of its licensees, is inextricably intertwined with its particular trademark since its licensees may not respond to street hails and must rely on calls from customers to the base requesting Aristacar’s services. The volume of business therefore depends upon the public’s familiarity with Aristacar’s name, logo, and other distinguishing marks. Aristacar seeks to persuade the court that because the TLC requires the display of the base identification placard on the for-hire vehicle and permits no street hails, the contracts between Aristacar and its licensees somehow escape the definition of a franchise. This argument has no merit since the statute is satisfied when the “offering, selling, or distributing goods or services” (here, transportation services) is “substantially associated with the franchisor’s trademark, service mark, trade name, logotype * * * or other commercial symbol designating the franchisor”. (General Business Law § 681 [3] [b].) Exemption from franchise is expressly limited by the statute and such exemption does not include those situations, as here, where another governmental agency promulgates rules with regard to the display of identification of the base name and the method of procuring customers.
Although it is unnecessary to look further in order to hold *554 that Aristacar is subject to article 33, the documentation submitted, as in Vimbor (supra), indicates that Aristacar regulates virtually every aspect of its licensees’ activities including the type of car to be driven, dress code, and how the customers should be treated. Each licensee agrees, according to the sample license agreement in evidence, to abide by all the rules and regulations of Aristacar which may be promulgated, amended, and modified by Aristacar. Aristacar does not refute that its licensees are regulated but rather sets forth the ways in which they are not regulated. Additionally it asserts that the rules and regulations are promulgated by the licensees, a statement belied by the sample agreement submitted by the plaintiff in response to defendant’s demand for a bill of particulars. Thus, the arrangement between Aristacar and its licensees meets the definition of a franchise as set forth in General Business Law § 681 (3) (a); that is, for a fee, the licensee acquires the right to engage in the business of distributing Aristacar’s transportation services under a "marketing plan or system prescribed in substantial part by a franchisor [here, Aristacar].” (See also, Vimbor v Fleet Radio, supra.)
The court agrees with the defendant that the facts in Vimbor (supra) closely approximate those at bar. The plaintiff claims to distinguish Vimbor on the basis that the agreements therein, as opposed to the Aristacar agreements, refer to the corporation and drivers as franchisor and franchisee, respectively. Avoiding the impact of the New York Franchise Law by the use of terms other than franchise, et al., in contracts establishing them would make the law a nullity. The Legislature, by the broadened definition of the term "franchise” in the Franchise Law, obviously chose to cover many species of distributorships and other commercial relationships not previously concerned with franchise regulations.
Accordingly, the court grants summary judgment in favor of the defendant and declares, as a matter of law, that Aristacar’s activities make it subject to the Franchise Law (General Business Law art 33). The activities constitute franchising: a system of marketing and distribution whereby a small independent businessman (the licensee/franchisee) is granted, for a fee, the right to distribute the transportation services of another (the franchisor/Aristacar), in accordance with the *555 established standards and practices of Aristacar and with its assistance, including provision of the radio equipment, customers, and billing services (see, Kaufmann, Practice Commentary, McKinney’s Cons Law of NY, Book 19, General Business Law art 33, at 587). The plaintiffs cross motion for summary judgment is denied in all respects.